UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MACDERMID, INC.
    Plaintiff,

v.

JACKIE DEITER

    Defendant.

No. 3:11-CV-00855-WWE

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff MacDermid, Inc. has filed an action against defendant Jackie Deiter alleging that she improperly forwarded data files containing highly confidential and proprietary information and/or trade secrets belonging to plaintiff from her MacDermid e-mail account to her personal e-mail account.

Defendant has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, defendant's motion to dismiss will be granted.

**BACKGROUND**

Plaintiff MacDermid is a chemical company engaged in the development, manufacture and sale of a broad range of chemical and printing products and processes, with its principal place of business in Waterbury, Connecticut.

Defendant Jackie Deiter served as an account manager for MacDermid Chemicals Inc., plaintiff's subsidiary, from 2008 to 2011. MacDermid Chemicals is based out of Mississauga, Ontario, Canada. As an account manager, defendant's duties and responsibilities included managing existing customer accounts, obtaining new customers and providing technical service

to customers. At all relevant times, defendant was a Canadian citizen who lived and worked in Canada. Defendant has never visited Connecticut.

MacDermid Chemicals decided to terminate defendant's position on April 7, 2011. Plaintiff alleges that defendant became aware of her pending termination before her employment ended. Plaintiff further alleges that as a result of this awareness, defendant improperly forwarded data files containing highly confidential and proprietary information and/or trade secrets belonging to plaintiff from her MacDermid e-mail account to her personal e-mail account.

Defendant admits that she sent e-mails containing confidential information to her home computer. However, defendant claims that she did so only because she could not print at home from her employer-provided laptop computer. In order to print material for her presentations while she was at home, defendant needed to print from her home computer. In order to do this, she needed to send information from her MacDermid computer to her home computer and then print the required material. Defendant also maintains that her actions were not kept secret from other MacDermid employees.

Defendant has moved to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as

2

true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

This Court must first consider whether it has personal jurisdiction over the defendant before reaching the merits of any claims. A court engages in a two-step process to determine whether it may exercise personal jurisdiction over a defendant. See Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir.2005). First, it must consider whether Connecticut's long-arm statute confers jurisdiction, and then it must determine whether such exercise comports with the Due Process Clause of the United States Constitution. See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163-64 (2d Cir.2010).

Before discovery, a plaintiff facing a 12(b)(2) motion may defeat the motion by pleading legally sufficient allegations of jurisdiction. Ball v. Metallurgie Hoboken-Overpelt, 902 F.2d 194, 197 (2d Cir. 1990). "Where . . . the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). These pleadings and affidavits are construed in the light most favorable to plaintiff, with all doubts resolved in plaintiff's favor.

**Connecticut's Long-Arm Statute**

"Under Connecticut law, in determining whether a court has personal jurisdiction over a foreign [party], the court must first determine whether the state's long-arm statute is satisfied; if so, the court must then decide whether that exercise of jurisdiction would offend the due process clause of the Fourteenth Amendment." Gerber Trade Fin., Inc. v. Davis, Sita & Co., P.A., 128 F. Supp. 2d 86, 90 (D. Conn. 2001).

Connecticut's long-arm statute regarding individuals is Connecticut General Statutes Section 52-59b. It provides in relevant part:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, . . . who in person or through an agent: . . . (2) commits a tortious act within the state, . . . (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . . or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Plaintiff alleges that this Court has personal jurisdiction over defendant pursuant to subsections (2), (3) and (5) of the long-arm statute.

First, plaintiff alleges that defendant committed a tortious act within Connecticut. Plaintiff argues that because defendant's "conduct was clearly aimed at plaintiff's computer systems located in Waterbury, Connecticut, a tortious act was committed in Connecticut." This interpretation conflicts with the plain meaning of subsection (2), especially when subsection (3)

explicitly applies to tortious acts committed outside the state. Plaintiff cited United States v. Ivanov and Diaz v. Elete for the proposition that tortious activity has been found to have occured in-state despite a perpetrator's remote location. 175 F. Supp. 2d 367 (D. Conn. 2001); 2004 WL 1087468 (S.D.N.Y. May 14, 2004). However, the court in Ivanov was analyzing *criminal* statutes under which the defendant was charged. There, the relevant criminal laws were clearly intended by Congress to apply extraterritorially:

> There is a presumption that Congress intends its acts to apply only within the United States, and not extraterritorially. However, this presumption against extraterritoriality may be overcome by showing clear evidence of congressional intent to apply a statute beyond our borders. United States v. Ivanov, 175 F. Supp. 2d at 373.

The present case is a civil action and jurisdiction must be based on Connecticut's long-arm statute.

In Diaz v. Elete, personal jurisdiction in New York was based on tortious activity outside the state causing injury to person or property within the state, the corollary to subsection (3) of Connecticut's long-arm statute, not subsection (2); hence, the court inquired into whether the defendants derived substantial revenue from interstate commerce. 2004 WL 1087468 at *4. Neither of the above cases cited by plaintiff contradict the plain meaning of subsection (2) of Connecticut's long-arm statute. Therefore, personal jurisdiction has not been obtained through section 52-59b(a)(2).

Second, plaintiff argues that defendant committed a tortious act outside the state causing injury to person or property within the state. However, using the "situs of injury test," the location of the injury is the same as the original event which caused the injury, not where resultant damages are subsequently felt. See Robb v. Robb, 620 F.Supp.2d 282, 286 (D. Conn.

5

2009). As defendant's employer was based in Canada, it is unclear where the first effect of the alleged tort was located. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 792 (2d Cir. 1999). More importantly, plaintiff has not alleged persistent course of conduct or substantial revenue as required by subsection (3) of Connecticut's long-arm statute. Thus, § 52-59b(a)(3) does not confer jurisdiction.

Finally, plaintiff contends that defendant is subject to Connecticut's long-arm statute because she used an in-state computer network. Specifically, plaintiff alleges that "because Deiter accomplished this criminal and tortious conduct by means of a computer and a computer system located in Connecticut, jurisdiction over Deiter is also proper under § 52-59b(a)(5)." However, as the Connecticut Superior Court pointed out in Mitchell v. Patterson: "If the legislature had meant internet instead of computer network it would have said so," as it did in dozens of other statutes. 2005 WL 1671528, *4 (Conn. Super. 2005). Here, defendant merely emailed herself information from one computer in Canada to another computer in Canada. That the information was originally obtained over the internet from a network of computers in Connecticut does not mean that the defendant "used" a computer network located within the state, as defined in subdivision (3) of subsection (a) of section 53-451:

> (3) "Computer network" means a set of related, remotely connected devices and any communications facilities including more than one computer with the capability to transmit data among them through the communications facilities.

Such an interpretation would read the word "related" out of the statutory definition as all computers are remotely connected devices if connected to the internet.

Plaintiff has alleged that defendant "accessed [plaintiff's] proprietary, confidential and

6

trade secret information protected and stored on computer servers in Waterbury, Connecticut, and then e-mailed that information from her active work e-mail account to her personal e-mail account for use on her personally owned, home computer." Importantly, the unauthorized e-mail transfer from one computer in Canada to another computer in Canada is the basis for plaintiff's claims. Plaintiff argues that defendant was not authorized to access the protected information using her work computer with the *purpose* of subsequently transferring it to her personal computer in an effort to blur the issue of initial authority to access the information. It is clear, that defendant's tortious conduct occurred, if at all, when defendant transferred plaintiff's proprietary information onto her home computer from her work computer, a transaction that occurred exclusively in Canada. Therefore, this Court does not have jurisdiction pursuant to section 52-59b(a)(5) of Connecticut's long-arm statute.

## **CONCLUSION**

This Court does not have personal jurisdiction over defendant pursuant to Connecticut's long-arm statute. As such, due process analysis is unnecessary and defendant's motion to dismiss is GRANTED.

DATED this 30th day of November, 2011 at Bridgeport, Connecticut.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE